**SAUNDERS, Plaintiff-Appellant v. BOARD OF EDUCATION OF VAN BUREN TOWNSHIP, Defendant-Appellee.**

Ohio Appeals, Second District, Montgomery County.

No. 1800. Decided June 13, 1944.

174

George Holland, Dayton, for plaintiff-appellant.

E. E. Duncan, Asst. Pros. Atty., Dayton, for defendant-appellee.

## OPINION

BY THE COURT:

This matter is before this Court on an appeal from the final judgment of the Court of Common Pleas, in favor of defendant. The appeal is upon questions of fact and law.

The amended petition upon which the matter was tried recites that plaintiff is a taxpayer and brings the action in behalf of himself and all other persons similarly situated. He recites the fact that he is engaged in the plumbing business; that defendant is the Board of Education of Van Buren Township, and that said Board determined to erect a public building; that notices were published in two Dayton papers on August 2, 9, and 16, 1943, soliciting bids. It is alleged that in accordance with the notice so published sealed bids for the construction of the school building were to be received by the Board at Fairmont High School until 12:00 o'clock noon, EWT, on August 23, 1943. Plaintiff alleges that in compliance with the notice and within time and at the place named in said notice, he filed a sealed bid, same being in all respects as required by the notice so published. He avers that in his said sealed bid he proposed to do the plumbing, including the work and material; furnishing labor for the sum of $3,477.00, and the material for the sum of $7,000.00, making a total bid of $10,477.00; that he submitted the lowest and best bid that was filed within the time and at the

place set out in said notice so published; that at the time of the opening of the bids, the bid of H. J. Osterfeld Plumbing Company was opened and read with plaintiff's bid and other bids; that the bid of Osterfeld Plumbing Company agreed to perform the labor for $4,880.00, and to furnish the material for $5,583.00, making a total bid of $10,425.00, said total bid being $54.00 less than the bid submitted by plaintiff for the plumbing. It is further alleged that the Osterfeld Plumbing Company did not comply with the conditions of the notice and the provisions of the law regulating the making of bids, in that said bid was not filed with or received by the Board at the High School before or at 12:00 o'clock noon EST on August 23, 1943, and was filed with and received by the Board at the place mentioned in the notice after 12:00 o'clock noon on August 23, 1943; that the bid did not comply with the regulations of the law for letting the contract in that the Board did not advertise for bids in two newspapers of general circulation in the district for a period of four weeks, but did advertise for a period of three weeks. Plaintiff alleges that he has been informed that the Board has accepted the bid of the Osterfeld Plumbing Company and has entered into a contract with said Company. Plaintiff says that the Board had no urgent necessity nor reason for the security and protection of school property in acceptance of said bid of Osterfeld Plumbing Company after 12:00 o'clock noon EWT on August 23, 1943, and had no urgent necessity nor reason for the security of said school property in entering into a contract with the Osterfeld Plumbing Company after the acceptance of said bid.

Plaintiff prays that upon hearing that the Board be enjoined from accepting the bid of Osterfeld Plumbing Company and be enjoined from entering into a contract for the plumbing with said Company, or if said bid has been accepted and said contract entered into, that the same be declared illegal and void and for other relief.

The Board answered to the orginal petition which answer was adopted as the answer for the amended petition, setting up four defenses, (1) The Board makes certain admissions, among them that the plaintiff filed his bid as alleged, and that the Osterfeld bid was $54.00 less than that of the plaintiff. (2) It is alleged that the bid of Osterfeld Company was submitted according to the notice, except that instead of being left at the Fairmont High School it was left at the office of the architect whose name was given in the bid notice, said bid being left with the architect before 12:00 o'clock noon of August 23rd., and that

by 1:00 or 1:30 p. m. it was delivered by the architect, unopened, to the office of the Board at Fairmont High School and held intact and unopened until the Board met at 8:30 p. m. on that day —when all bids were opened publicly. Defendant says that it waived any objections on its part to the place where the Osterfeld Company bid was filed, and accepted it as a valid bid, believing it to be for the best interest of said District and without prejudice to the taxpayers. (3) It is alleged that the petition should be denied for the reason that the plaintiff has allowed practically seven weeks time to elapse before filing his petition, knowing that defendant immediately after August 23, 1943, let the contract to said Osterfeld Plumbing Company, and that said Company has already entered into the performance of its contract, and has performed a substantial part thereof, and that by reason thereof plaintiff is guilty of laches in coming into Court at this late hour, and that gross inequity would inure to the Board and the Plumbing Company were plaintiff to prevail, especially since the construction and subject is being rushed to completion with the aid of the Federal Government. (4) That it is impossible to grant the injunction against entering into the contract for the reason that the contract was actually entered into several weeks ago, of which plaintiff was fully aware before he filed his petition.

We have stated the contents of the amended petition. The orginal petition was not brought as a taxpayer but as an unsuccessful bidder. It was substantially the same as the amended petition, alleging the defects complained of. The prayer of the original petition was that the Board be enjoined from accepting the bid of Osterfeld Plumbing Company and be enjoined from entering into a contract for the plumbing of the building with the said Osterfeld Plumbing Company and for other relief. The difference between the original petition and the amended petition is that the original petition was based upon the alleged right of the unsuccessful bidder to secure the contract, and the amended petition is based upon the right of the taxpayer to proceed against the letting of the constract. The prayers of the two petitions differ slightly.

Plaintiff moved that certain portions of the answer. including a part of the (2), (3), and (4) defenses be stricken. This motion was not passed upon until later in the proceedings.

Plaintiff filed a reply denying all allegations of the (2), (3), and. (4) defenses not admitted.

On November 8,. 1943, the Court found against plaintiff and for defendant, and further that the petition of the plain-

tiff should be dismissed. A motion for new trial being filed, the Court, on November 10, 1943, overruled said motion and ordered that the petition of plaintiff be dismissed. Thereupon, plaintiff gave notice of appeal from this final order entered by the Court as of November 10, 1943, said appeal being on questions of law and fact.

The errors assigned by plaintiff-appellant are: (1) That the Court erred in overruling the motion of plaintiff to strike certain allegations from defendant's answer; said allegations being set out fully in said plaintiff's motion. (2) That the ruling, finding, order and judgment of the Court is contrary to law, and contrary to the weight of evidence. (3) That the Court erred in the admission of testimony prejudicial to the rights of plaintiff, which was then and there excepted to. (4) That the Court erred in the rejection of testimony offered by said plaintiff; said rejection being prejudicial to the rights of plaintiff and being then and there excepted to. (5) For all other errors appearing upon the face of the record.

On cross-examination, Mr. Saunders, plaintiff-appellant, testified in substance as follows:

(Q) On what theory do you claim that, as a taxpayer, you are damaged by giving this contract to the Osterfeld Plumbing Company?

(A) I look at it this way. I spent a lot of time figuring that work, you can't guess at a job like that.

(Q) Did you do that as a taxpayer or as a business man? My question was, as a taxpayer, how were you injured by letting this contract?

(A) As a taxpayer I guess I wasn't.

(Q) You were benefited weren't you?

(A) No, I don't think so because I think any one could go in and stop the job.

(Q) Is that the only reason?

(A) Yes.

(Q) It is $54.00 under your bid? (A) Yes.

(Q) To that extent the taxpayer would be benefited, wouldn't he?

(A) Not if some one would stop the job they wouldn't.

(Q) The job didn't stop—they would be benefited wouldn't they?

(A) They would for $54.00, yes.

We thus will observe that while the action was brought by the plaintiff-appellant as a taxpayer for his own benefit and the benefit of others in like situations, he finally answered

that as a taxpayer he had no interest in the letting of the contract and that as a matter of fact the taxpayers received a benefit of $54.00, the amount that the accepted bid was under his bid, and we must regard the case as one brought by an individual for his own benefit and not as one brought by a taxpayer for the general welfare of taxpayers.

Counsel for plaintiff-appellant asserts that the case is controlled by §7623 GC, the provisions of which counsel assert are mandatory. **Section 7623 GC** provides the directions for bidding and letting contracts for public schools, and states in substance that when the board determines to build a school house or make any repairs provided for in the chapter, which will exceed $3,000.00, **except in case of urgent necessity** or for the security and protection of the school property, it must proceed as follows: (1) For the period of four weeks, the board shall advertise for bids in some newspaper of general circulation in the district and two such papers, if there are so many. If no newspaper has a general circulation therein, then by posting such advertisement in three public places therein. Such advertisement shall be entered in full by the clerk, on the record of proceedings of the board. (2) The bids, duly sealed up, must be filed with the clerk by twelve o'clock noon, of the last day stated in the advertisement. (3) The bids shall be opened at the next meeting of the board, be publicly read by the clerk, and entered in full on the records of the board; provided, that the board of education may by resolution provide for the public opening and reading of such bids by the clerk, immediately after the time for filing such bids has expired, at the usual place of meeting of the board, and for the tabulation of such bids and a report thereof to the board at its next meeting. (4) Each bid must contain the name of every person interested therein, and a specified bond. (5) When both labor and materials are embraced in the work bid for, the board may require that each be separately stated in the bid, with the price thereof, or may require that bids be submitted without such separation. (6) None but the lowest responsible bid shall be accepted. **The board in its discretion may reject all the bids, or accept any bid for both labor and material for such improvement or repair, which is the lowest in the aggregate.**

The other matters covered by the statute are not pertinent to the issue.

On page 20, et seq. of the record, the Clerk of the Board was examined as to the reason for advertising for three weeks instead of four, and upon being asked why the legal advertisement ran three weeks instead of four, he replied—"Because

of the emergency existing in getting a school completed just as soon as possible." Upon being asked whether there was anything in the minutes on that, he replied that there was and read from the minutes of July 29, 1943, to the effect that the Board met in special session and that the Clerk reported that the release of material for the construction of the building had been approved, and that he was assured that the grant for the building would be approved officially as soon as the President's signature was secured. "In order to save time, and so that construction can be started as soon as possible, Mr. Spivey moved that because of the emergency existing the following ad be run in the Dayton Daily News and the Dayton Journal on the following dates: August 22, August 9 and August 16, 1943."

Upon being inquired of as to the facts that indicated an emergency, the Clerk testified that the Board was held up by W. P. A. in getting a building, "and of course there has been somewhere in the neighborhood of 1500 new homes erected at that place and our schools are crowded we don't have room for them, and we are now sending about three hundred children to Dayton for school purposes every day, and we are in a hurry to get a school building there." "Q. Was the Federal government urging the Board? A. Yes, they were on us all the time to speed the thing up. Q. How did the Board vote on the question? A. They all voted yes. They all voted for it."

This is the testimony on behalf of defendant-appellee upon which it is sought to justify advertising for three consecutive weeks rather than four, as provided for in the statute.

Counsel for plaintiff-appellant claims that the provisions of the statutes "Except in cases of urgent necessity or for the security and protection of the school property", the Board must proceed as follows: namely, the advertising for four weeks. Counsel asserts that the Board declared an emergency, not an "urgent necessity" and cites cases which he claims distinguishes the two phrases and quotes the definition of an emergency as being a sudden and unexpected occurrence or condition calling for immediate action.

He cites the case of Bolce v Board of Education, 22 Abs 363; Mueller v Board of Education, 11 O. N. P. (NS) 113; State, ex rel, Waltz; State v Board, 6 C. C. (NS) 345; Perkins v Bright, 109 Oh St 14.

We have read these cases and are unable to persuade ourselves that the Board having voted as shown by the minutes that the advertisement should be run for three insertions in-

stead of four because of the "emergency existing", failed to bring itself within the provisions of the statute, "except in cases of urgent necessity" or for the security and protection of school property. The Board alluded to the fact that there had been in the neighborhood of 1500 new homes and the schools are crowded and the Board did not have room for the children, and that it was sending about 300 children to Dayton every day for school purposes, and that the Board was in a hurry to get a school building, and voted that because of the "emergency existing" the advertising should run for three consecutive weeks.

We believe that this determination of the Board brought its action within the exception of the statute alluded to, we cannot see that there is any substantial difference between the statutory expression "urgent necessity" and the words used in the resolution "emergency existing". There may be some fine distinction between what is an "emergency" and what is a "necessity", but it is evident that the Board used the word "emergency" in its resolution as a proper designation of the statutory term "urgent necessity".

The case of **Mueller v Bd. of Ed., 11 O. N. P. (NS) 113,** reviews quite at length the various decisions in the State of Ohio, and it was there found that no "urgent necessity" had been established but the decision of the court is not to the effect that under the case at bar the facts stated would not have constituted an "urgent necessity".

The last cited case holds that a failure of the Board to advertise for bids for "extras" which have become necessary, renders void a contract for supplying such "extras" unless the urgent necessity existed for completion of the work without the delay incident to advertising for the submission of bids. Also, where failure to comply with the statutory requirements with reference to public work may be excused by "urgent necessity" for an earlier completion of the work must be determined upon the circumstances of the particular case.

The case of **Bolce v Board, 22 Abs 363,** was one in which the question as to whether "urgent necessity" as designated in §7623 GC is synonymous with "emergency". It is stated by the Court on p. 363:

"It will be noted that the board in its resolution declared said painting to be an 'emergency' and not an 'urgent necessity', as set forth in the statute. Whether there is a distinction in the meaning of these two terms it is not necessary here to

decide, but it is sufficient to say that the board did not follow the statute."

This case does not determine that there is to be a distinction between "emergency" and "urgent necessity".

We find the matter has been considered by the then Attorney General, Edwin C. Turner, now Judge of the Supreme Court, in opinion of the Attorney General of Ohio. Vol. 1, 1915, at p. 835. In that matter the Board requested the advice of the Attorney General as to whether or not the contract could be let as being one of "urgent necessity", in view of the fact that if it is necessary to re-advertise and secure further bidding the building could not be constructed in time for occupancy at the time of the beginning of the September term of the year. The Attorney General alludes to the case of Mueller v Bd. of Ed. 11 N. P. (NS) 113, already cited, and recites the facts stated by the Board in substance that if it is necessary to re-advertise for bids the building cannot be constructed in time for occupancy beginning with the fall term; that the schools of said township are overcrowded and there is considerable doubt as to the disposition to make of pupils if the building is not completed at the time, but it does not appear that any of the pupils would be prevented from attending school because of failure to complete the building by said time. The Attorney General states:

"On the contrary, I understand that said pupils will have practically the same accommodations at the beginning of said term as was had during the previous year and, while the schools of the district may be crowded and the pupils may be inconvenienced for a short time, it will be the duty of the board of education to make such arrangements for the reasonable accommodation of said pupils as will be possible under the circumstances, until such time as the new building will be ready for use."

And the Attorney General concludes—

"I am of the opinion, therefore, in answer to your question, that the circumstances mentioned in your letter do not constitute a case of 'urgent necessity' within the meaning of §7623 GC."

It is observed that the Attorney General adopts the deci-

sion of the Court to the effect that before the advertising may be excused "urgent necessity" must be determined from the circumstances of the particular case.

The facts recited in the case upon which the Attorney General gives his opinion are not identical with the ones at bar. The Attorney General stated that he understands that the pupils will have practically the same accommodations at the beginning of said term as was had during the previous year. That is not so in the case at bar. There was here a requirement that a new school building be constructed for the reason that the great influx of population, no doubt due to war conditions, had lead to the condition that many pupils had to be sent to the city of Dayton on account of overcrowded conditions existing by reason of the increased population.

We recognize a difference in that in the case the Attorney General reviews the same accommodations will be available to the pupils that had been used the previous year, while in the case at bar there will be a total lack of accommodations, and that it will be necessary to send a large number of pupils to Dayton.

We are of the opinion that the facts stated by the Board in its resolution are sufficient to create an emergency as used by the Board, which we construe to be the same as "urgent necessity", as designated by the statute.

If we are correct in this view, it furnishes a solution to the whole matter in that if "urgent necessity" exists there is no requirement that there be any advertisement, and consequently an advertisement for three weeks instead of four would be justified. By the same token the bids need not be filed by noon E. W. T., nor with the Clerk as provided by statute, but the Board had the right to accept the bid received after noon and filed with the architect instead of with the Clerk. This right the Board duly exercised.

The case of **Buchanan Bridge v Campbell, 60 Oh St 406,** holds that—

"A contract made by county commissioners for the purchase and erection of a bridge in violation or disregard of the statutes on that subject, is void, and no recovery can be had against the county for the value of such bridge. Courts will leave the parties to such unlawful transaction where they have placed themselves, and will refuse to grant relief to either party."

We cite this case especially among the many others that are cited in the Mueller case as being the best statement of the penalties that flow from the failure of the Board and the contractor to comply with the statute. The Bridge case has no direct connection with the case at bar except to show the strictness with which the courts require statutes to be complied with.

Another reason why the judgment of the Court below should be affirmed is that the petition is for certain relief, but the taxpayer fails to show that a taxpayer has any concern with the cause of action, and that as a matter of fact the taxpayer is benefited to the extent of at least $54.00 by the Board's action in accepting the bid of the appellee.

We are of the opinion that the plaintiff, acting in the capacity of a taxpayer, has failed to show any cause of action by a taxpayer, but that it is apparent that he has resorted to this device for his own exclusive interest.

We believe that the court was justified in finding as it did on the ground that the plaintiff as a taxpayer had no interest in the matter and that he failed as such taxpayer in showing any right to relief as a taxpayer.

Another reason alleged is that the unsuccessful bidder was guilty of laches in that he did not bring the action until at least 25% of the work was done by the successful bidder.

In the case of State, ex rel. v The Court House Building Commission, 18 N. P. (US) 97, it is held that:

"One who sues as a taxpayer to enjoin the performance of a public contract on the ground that the specifications therefor are invalid is not estopped by the fact that as an advocate of unsuccessful bidders he endeavored to procure for them the award of the contract; nor because of such fact will his suit be dismissed on the ground of a total want of good faith. As such taxpayer sues in a purely representative capacity his action is not barred by individual laches, notwithstanding the alleged invalidity of the specifications might have been known to him three months before the institution of suit, and in the interim large public expenditures have been incurred, * *".

In the case at bar, we have held that the action was not brought on behalf of the taxpayers but was in reality an action solely for the benefit of the plaintiff, and for that reason we are of the opinion that the rule stated in the above cited

case in reference to laches of a taxpayer does not control. As a private bidder he had full knowledge of the fact that the contract was let to another bidder, but still waited for a period of seven weeks during which time the successful bidder began the erection of the improvement and expended large sums in the prosecution of the work.

We are of the opinion that plaintiff-appellant could not stand idly by after knowing the conditions that existed and permit his rival bidder to become involved in expense when a decision in his favor would necessarily result in loss to the one who in good faith was going forward with the contract awarded to him.

The statute says that none but the lowest responsible bid shall be accepted. Plaintiff's bid was not the lowest responsible bid, and the Board accepted the lowest responsible bid.

We are of the opinion that there was no error in the judgment of the Court below. Judgment affirmed, cause remanded.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.