THE STATE, EX REL. SCHAEFER ET AL., *v.* BOARD OF COUNTY COMMRS. OF MONTGOMERY COUNTY.

(No. 3167—Decided April 14, 1967.)

*Messrs. Harshman, Young, Colvin & Alexander,* for relators.

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. Paul J. Fleischauer,* for respondent.

SHERER, J. Relators are seeking a writ of mandamus commanding the respondent, Board of County Commissioners, to disregard all bids submitted for the construction of two incinerator plants. Relators allege that the plans and specifications prepared and distributed to contractors for bids are illegal. This matter is before the court on respondent's demurrer to the petition on the grounds (1) that relators lack standing to sue, and (2) that the petition fails to state facts showing a cause of action. They allege that they are bringing this action as taxpayers under authority of Section 309.13, Revised Code.

Considering first our own jurisdiction in an action in mandamus originating in this court, we point out that ordinarily relators bringing the action as taxpayers would have an adequate remedy in the ordinary course of law by way of injunction, as provided in Section 309.13, Revised Code. However, relators allege, and respondent admits, that it is required to act on April 17, 1967, and time is a controlling consideration here in determining whether relators have an adequate remedy at law. Because of the time element, the remedy of mandamus chosen by relators is appropriate here. *State, ex rel. Riley Construction Co.,* v. *East Liverpool Board of Education,* 10 Ohio St. 2d 25.

Coming then to the question of standing to sue, relator Frank W. Schaefer alleges that he is a resident of and a taxpayer in Montgomery County, Ohio; that he represents relator Plibrico Company and does business as Plibrico Sales and Service Co., Division of Frank W. Schaefer, Inc.; and that Plibrico Sales and Service Co., Division of Frank W. Schaefer, Inc., is a taxpayer in Montgomery County, Ohio, and has been in the business of constructing incinerators and refractories for many years. These allegations are admitted by the demurrer to the petition.

It is respondent's contention that relators have not the capacity to sue in this case because their action seeks pecuniary benefits for themselves rather than for the benefit of the pub-

lic generally. Respondent cites 52 Ohio Jurisprudence 2d 3, 4, Section 2, and *Saunders* v. *Board of Education,* 42 Ohio Law Abs. 172, in support of this argument.

Section 309.12, Revised Code, is the so-called "watchdog" statute providing for the protection of county funds. Section 309.13, Revised Code, is the "taxpayer's suit" provision which applies to county funds and provides that the suit shall be brought in the name of the state of Ohio for the benefit of the county.

A taxpayer's action in mandamus may be maintained by a party in a private capacity to enforce the right of the public to the performance of a public duty, as distinguished from a purely private right of the taxpayer to the performance of a duty imposed upon a public servant. *State, ex rel. Nimon,* v. *Village of Springdale,* 6 Ohio St. 2d 1.

At page 4, the court said that: "In a long line of cases, this court has repeatedly recognized the rule, as stated in 35 Ohio Jurisprudence 2d 426, Section 141, that 'where the question is one of public right and the object of the mandamus is to procure the enforcement of public duty, the people are regarded as the real party and the relator need not show that he has any * * * special interest in the result, since it is sufficient that he is interested as a citizen or taxpayer in having the laws executed and the duty in question enforced * * *.' * * * *"

By analogy it follows that the existence of any "special interest in the result" should not defeat the right of an admitted taxpayer to maintain such an action.

The allegations in the petition, admitted by the demurrer, are such as to bring this action squarely within the rule thus stated in the *Nimon case.*

Because, in addition, it is alleged, and admitted by the demurrer, that the relators directed a letter to the Prosecuting Attorney of Montgomery County requesting him to take action to prevent the respondent from entering into any contract based upon such plans and specifications and that he refused to take such action, we conclude that relators do have standing to bring this action.

Coming then to the question of the petition stating facts sufficient to constitute a cause of action, relators allege the respondent is proposing to construct two incinerator plants in

Montgomery County for use as public buildings; that plans and specifications for the construction of such incinerators were prepared and distributed for the construction of such incinerators; and that relators obtained a copy of such specifications in order to prepare a bid as an incinerator subcontractor.

Relators further allege that such specifications are illegal for the construction of a public building because they are drawn in such a way as to permit only one company to meet the qualifications required of an incinerator subcontractor; and that the following are pertinent sections of such specifications:

Page 31-01. Section 31.02. "Qualifications of Incinerator Subcontractor"

"He shall have been, and shall be currently exclusively engaged in the furnishing and installing of municipal incinerators for the past fifteen (15) years.

"He shall have furnished and installed equipment of the type he proposes in at least five (5) municipal plants in different cities or counties in the United States. The five plants must currently be operating and giving satisfactory service.

"At least two of the five municipal or county installations shall have incinerator units in satisfactory operation of the same size and capacity as specified in these specifications and related drawings.

"At least two of the five plants shall be successfully reclaiming and selling detinned tin cans."

Page 31-05 from Section 31-14:

"Each drying grate shall be a type specifically designed for the predrying of municipal refuse in an incinerator and shall be manufactured and installed by the Incinerator Subcontractor or the principal Owners. The incinerator subcontractor or the principal Owners shall have manufactured this particular grate for this service for at least twenty (20) years and he shall have manufactured and installed drying grates for at least five proven municipal or county installations now in service using the same type grate of which at least one installation has been in constant satisfactory service for at least twenty (20) years and at least two additional installations which have been in constant satisfactory service for at least five (5) years."

Page 31-07 from Section 31-17:

"Each ignition grate shall be a type specifically designed

for the purpose of preliminary burning of municipal refuse and providing heat for the predrying of refuse in the drying grates and providing heat to assist the burning of municipal refuse in the rotary kiln. The ignition grate shall be manufactured and installed by the Incinerator Subcontractor or his principal Owners; and the Incinerator Subcontractor or his principal Owners shall have manufactured this particular grate for this service for at least twenty (20) years. He shall have also manufactured and installed ignition grates for at least five (5) proven municipal or county installations now in service using the same type grate of which at least one installation has been in constant satisfactory service for at least twenty (20) years and at least two additional installations that have been in constant satisfactory service for at least five (5) years.''

Page 31-08 from Section 31-19:

''Each rotary kiln shall be a type specifically designed for the purpose of burning municipal refuse and shall be designed, furnished and installed by the Incinerator Subcontractor or his principal Owners and the Incinerator Subcontractor or his principal Owners shall have designed, furnished and installed rotary kilns for this particular service for at least twenty (20) years.

''He shall also have at least five (5) proven municipal or county installations now in service using the same type kiln of which at least one installation has been in constant satisfactory service for at least twenty (20) years and two additional installations that have been in constant satisfactory service for at least five (5) years.''

Relators also allege that the instructions to bidders in such specifications contain the following language as No. 19:

''The furnishing and installing of the incinerator and complementary equipment is a part of the contract and the cost of same is to be a part of and included in the amount bid.

''This equipment will be furnished and installed by:

''International Incinerators, Inc.
Walton Building
Atlanta 3, Georgia
Phone—Jackson 3-1678

''All bidders qualified as General Contract Bidders may obtain a copy of the complete incinerator proposal from the

above company. A copy of this proposal is on file with the Engineers. General Contract Bidders may confirm their proposals at this location."

Section 343.01, Revised Code, authorizes the Board of County Commissioners to establish refuse disposal districts, and Section 343.04, Revised Code, authorizes such board to construct refuse disposal facilities. It is conceded in argument that the respondent board is required to follow the provisions of Chapter 153., Revised Code, as they relate to the construction of county buildings or other improvements.

The first 20 sections of this chapter pertain to "state buildings," the next 29 sections pertain to "county buildings and bridges," and the last 10 sections pertain to "contracts for constructions."

Section 153.31 *et seq.*, Revised Code, states the requirements having to do with the preparation, filing and publication of plans, specifications and material lists, as well as the procedure for inviting bids and letting contracts for erecting county buildings or other improvements.

The requirements for competitive bidding on contracts for the erection of county buildings by private contract, set forth in Section 153.31 *et seq.*, Revised Code, are mandatory, and a contract made without compliance with such sections is void. *Pincelli* v. *Ohio Bridge Corp.*, 5 Ohio St. 2d 41.

Section 153.50, Revised Code, provides that an officer, board or other authority of the state, a county, etc., authorized to contract for the erection of a public building or improvement, and required by law to advertise and receive proposals for the furnishing of materials and doing the work necessary for the erection thereof, shall require separate and distinct proposals to be made for furnishing such materials or doing such work, or both, in their discretion, for each separate and distinct trade or kind of mechanical labor, employment, or business entering into the improvement.

Section 153.52, Revised Code, formerly Section 2364, General Code, applicable to the proceedings of the board here, provides that: "The contract for doing the work belonging to each separate trade or kind of mechanical labor, employment, or business, or for the furnishing of materials therefor, or both, shall be awarded by the officer, board, or other authority refer-

red to in Section 153.50 of the Revised Code, in its discretion, to the lowest and best separate bidder therefor * * *."

In *Columbus Building and Construction Trades Council v. Moyer,* 163 Ohio St. 189, 200, 201, the Supreme Court construed Section 2364, General Code, as amended, 115 Ohio Laws 406. A part of that section is now Section 153.52, Revised Code. The court called attention to the title of the bill, which was: "* * * to provide for separate bidding on mechanical equipment on contracts for the erection or alteration of state buildings." The court further stated that: " 'The title of the act * * * indicates the purpose which induced the enactment of such law, and must be considered in arriving at a correct interpretation of its terms.' " In that case, the court took into account that Section 2364, General Code, as amended by the enactment of supplemental Sections 2314 and 2314-1 of the General Code, now Sections 153.01 and 153.02 of the Revised Code, was a special section applying only to state buildings which required separate contracts. Sections 153.51 and 153.52, Revised Code, on the other hand, as related to county buildings, permit the letting of a contract as a whole.

It is our conclusion that the incinerators, their complementary equipment and their installation are included in the terms "trade or kind of mechanical labor, employment, or business" as used in Sections 153.51 and 153.52, Revised Code, and, in addition, as an "improvement," as this term is used in Section 153.50, as they relate to county buildings.

Section 153.51, Revised Code, provides that no contract for an entire job, or for a greater portion thereof than is embraced in one such trade or kind of mechanical labor, shall be awarded, unless the separate bids do not cover all the work and materials required or the bids for the whole or for two or more kinds of work or materials are lower than the separate bids in the aggregate.

The respondent board was required by Section 153.50, Revised code, to seek from general, or "prime," contractors, separate proposals for furnishing materials and work necessary to installing incinerating equipment in the buildings to be erected. The board, in its discretion, could invite proposals for materials and work separately or for both combined.

The respondent board chose, in the instant case, to do

neither. Rather, it invited bids under specifications which limited each general or prime contractor bidder's discretion as to the subcontractor whose services or material he would use to a single firm, *i. e.*, International Incinerators, Inc.

Such action is clearly an effort to avoid the salutary provisions of the statute requiring competitive bidding on public contracts, whatever hair-splitting arguments may be made concerning some of the concededly ambiguous provisions in Chapter 153, Revised Code. We conclude, accordingly, that the specifications hereinbefore described, more particularly that in paragraph 19, designating International Incinerators, Inc., as the only acceptable subcontractor for the manufacture and installation of incinerator facilities in the structures in question, are not in conformity with the statutes requiring competitive bidding on county contracts.

It has been said that no chain is any stronger than its weakest link. The incinerator machinery, its complementary equipment and its installation are a part, and probably the largest and most important part, of the whole contract. Respondent claims the right to so write its specifications so as to exempt this part of the contract from competitive bidding. The mandatory provisions of the statutes requiring competitive bidding on the whole contract must be held to apply as well to its component parts relating to each separate trade or kind of mechanical labor, employment or business and for the furnishing of materials therefor. Any other interpretation of these statutes would rob them of their intended force and effect.

It remains only to consider whether the nature of the work or service is such as to exempt it from the force of such statutes.

In *State, ex rel. Doria*, v. *Ferguson, Aud.*, 145 Ohio St. 12, the court in the second paragraph of the syllabus held that:

"Although contracts relating to public projects, involving the expenditure of money, may not ordinarily be entered into by public officials without advertisement and competitive bidding as prescribed by law, an exception exists where the contract involves the performance of personal services of a specialized nature requiring the exercise of peculiar skill and aptitude."

That case involved a contract for furnishing certificates of title on various parcels of real estate through which the Department of Highways desired to construct a highway.

It is argued in the reply brief that the respondent board "with expert advice, has determined that the incinerator and complementary equipment sought, with the requisite expertise for installation, are available from only one source. * * *."

Whether the board's determination in this regard is based on actual facts concerning the state of the art or industry of manufacture and installation of incinerator equipment is a matter which the respondent board must plead and prove—we cannot take judicial notice of such facts.

We recognize the right of respondent to establish "Qualifications of Incinerator Subcontractor" in their specifications. See, also, *Gamewell Co.* v. *Phoenix,* 216 F. 2d 928, 934. At pages 933, 934 and 935, the court sets forth the essential elements of specifications which would comply with statutes requiring competitive bidding. We fully appreciate the benefits to the public, which would follow the award of the work here to a firm with the skill and experience and a product which meet the respondent's specifications. But, there is the law to be taken into account. The Legislature must have believed that in the long run the public interest would best be served by the enactment of statutes requiring competitive bidding on public improvements. The Supreme Court has expressed the same opinion by making strict adherence thereto mandatory.

Considering the specifications relating to Incinerator Subcontractors together with the Instructions to Bidders set forth in the petition, we must conclude that respondent's specifications have effectively stifled competitive bidding for the incinerators, their complementary equipment and their installation. It may be that evidence would show that these matters should be excepted from competitive bidding. But, we are required to render our judgment upon the facts alleged by relators and admitted by respondent's demurrer. We consider that one who seeks to excuse himself from the operation of mandatory statutes should be required to prove the facts warranting such exception. See 21 Ohio Jurisprudence 2d 181, Section 169. The case of *State, ex rel. Doria,* v. *Ferguson,* 145 Ohio St. 12, was an original action in the Supreme Court submitted upon the petition, answer, reply and a stipulation of facts. The case of *Heninger* v. *Akron,* 64 Ohio Law Abs. 417, cited by the respondent board in support of the argument that special qualifications

142

may be established for bidders, was also submitted and determined on evidence.

We conclude that the facts alleged by relators and admitted by respondent show that respondent is about to enter into a contract which is illegal because it is made without compliance with the statutes requiring competitive bidding. Such facts further show that relators have capacity to maintain this action as taxpayers and that, in the absence of any evidence of record showing the product and services in question are absolutely unique, relators have a clear legal right to the relief sought.

Respondent's demurrer will be overruled.

*Demurrer overruled.*

CRAWFORD, P. J., and KERNS, J., concur.