JOURNAL ENTRY AND OPINION
Plaintiffs-appellants Ronald and Judith Chegan appeal from the judgment entered in Cuyahoga County Common Pleas Court in favor of defendants-appellees AAAA Continental Heating, Air conditioning and Building, Providence Insana and Joe Insana and Fifth Third Bank. Defendants-appellees Continental and the Insanas ("Continental defendants") bring a cross appeal and challenge the trial court's denial of their request for attorneys fees. We find no error in the proceedings below and affirm.
The facts giving rise to this appeal are as follows. On August 1, 1997, appellants refiled their previously dismissed complaint in Cuyahoga County Common Pleas Court alleging appellees violated Chapter 1345 of the Ohio Revised Code by failing to give them the required documents, failing to perform work in a workmanlike manner and committing unfair, deceptive and unconscionable acts and practices. On September 2, Fifth Third Bank answered the complaint. The Continental defendants served their answer upon appellants on October 10, 1997. The answer filed with the court was not journalized in the within action because it contained a clerical error in the case number. After several continuances, trial was set for August 7, 1998. Prior to commencement of trial, appellants orally moved for default judgment against the Continental defendants. The trial court, after determining that appellants had been served the answer and the proffered answer, did not differ from the documents previously filed or considered, overruled their motion and granted leave to the Continental defendants to file their answer. All parties waived any right to trial by jury and the matter went forward solely on appellants' claims for recission of the contract based upon appellees' failure to provide appellants with the right to cancel the contract in conformance with the Home Solicitation Act.
The evidence adduced at trial revealed that in March 1995, appellants sought bids to have their kitchen remodeled. They called Continental for an estimate because they were satisfied with Contimental's work performed in 1991 for the installation of air conditioning and a furnace in their home. In response, on March 24, Joe Insana, an authorized sales representative of Continental, met with appellants at their home where the parties executed a contract for the renovations at a price of six thousand six hundred dollars. Appellants further executed a waiver of buyer's right to cancel based upon an asserted emergency. As a down payment for the job, appellants gave Joe Insana a check postdated for a week later in the amount of six hundred dollars. The remaining amount due on the contract was to be financed through Fifth Third Bank. Continental typically confirmed the purchaser's credit information over the phone and it submitted appellants' financing information to Fifth Third Bank. Subsequently, the parties were notified of Fifth Third's approval of appellants' loan. After the financing was approved, Continental would have the subcontractor take the papers to the customer for signature before the work began. Continental sub-contracted appellants' kitchen remodeling to be performed by Victor Abromovich, Handyman Enterprise. Approximately a month after contracting for the renovations, the work began in appellants' kitchen. On May 12, 1995 a completion certificate was signed by appellant Judith Chegan. Upon Continental's submission of the completion certificate to Fifth Third Bank, the financed amount, six thousand one hundred dollars, was released to Continental. Continental paid the subcontractor. Upon receiving appellants' complaints about the workmanship in September 1995, Continental offered to correct defects but appellants declined to admit the workmen into their home. Appellants complained to the Better Business Bureau and, as a result, Continental agreed to binding arbitration on the matter. However, appellants canceled the arbitration prior to hearing.
Appellant Judith Chegan testified she was dissatisfied with the work Abromovich was doing. She complained that the sink was not flush against the wall, she and her husband had to purchase paneling because the contractor failed to put up drywall. She testified that she only signed the completion certificate because she felt pressured by Mr. Abromovich.
On cross-examination, Ms. Chegan conceded that she signed the waiver of buyer's rights. She was never unhappy with the cabinets; when she complained about the plumbing, it was fixed. She conceded that the contract does not address putting up paneling.
At the close of plaintiffs' case all defendants moved for dismissal of appellants' claims asserting that recission of the contract was not sought until after substantial change in the condition of the home had occurred and the doctrine of equitable estopple precluded relief. Defendants requested attorneys' fees pursuant to R.C. 1345.09 (F) (1). The request for dismissal was denied by the court.
The defense called Providence Insana, general mananger of Continental, who testified that Continental has been in business since 1990 at 33205 Rockford Drive, Solon, Ohio. This location is both the residence of the Insana family and the business address of Continental. The office was maintained in the garage of the residence. The stationery, checks, billing statements, buyer's right of cancellation notices, business card and all other documents contained the address, including the advertisement in the yellow pages telephone directory. She stated that the office was open to the public and suppliers, customers, contractors and bankers came to that location. The office was carpeted and had an entrance from the outside. Six employees worked at the office. The subcontractors reported there, they picked up job orders, turned in bank paperwork, completion forms and they got paid from that office. The garage office and basement showroom contained cabinet samples from Babin and All Side, formica samples, carpet samples from State and Crest Carpet.
On cross-examination, Ms. Insana conceded that Continental does not have a sign on the street or the mailbox and she never notified the City of Solon that Continental was running a business from her residence. However, she stated that the house had three personal phone lines, but there were six business lines to the office.
At the close of the evidence, the court found that the transaction for the renovation of the kitchen constituted a sale of consumer goods and services as contemplated by the Home Solicitation Law. But, the court further found that sufficient evidence was presented to support appellees' defense that an exception to the statute exists under the provision of R.C.1345.21 (A). The court denied defendants' request for attorneys fees as requested pursuant to R.C. 1345.09 (F) (1). On August 11, 1998, judgment was entered in favor of all defendants. Appellants timely appealed; the Continental defendants cross-appealed. On December 23, 1998, this court granted appellants' motion to dismiss Fifth Third Bank from the appeal. Appellants advance five assignments of error for our review:
 I. THE COURT ERRED IN NOT GRANTING DEFAULT JUDGMENT TO PLAINTIFFS AGAINST AAAA, JOE AND PROVIDENCE INSANA.
 II. THE COURT ERRED IN GRANTING LEAVE TO FILE AN ANSWER BASED UPON AN ORAL REQUEST FOR COUNSEL.
 III. THE COURT ERRED IN RULING THAT DEFENDANTS WERE EXEMPT FROM THE HOME SOLICITATION ACT WHERE THEIR PERSONAL RESIDENCE WAS FOUND TO BE A BUSINESS ESTABLISHMENT AT A FIXED LOCATION AT WHICH THE GOODS OR SERVICES INVOLVED THE TRANSACTION WERE REGULARLY OFFERED OR EXHIBITED FOR SALE.
 IV. THE COURT ERRED IN DETERMINING THAT THERE WAS A LIMITATION ON THE RIGHT TO CANCEL BY PLAINTIFFS UNDER THE HOME SOLICITATION ACT, OHIO REVISED CODE § 1345.21 WHERE PLAINTIFFS WERE NOT NOTIFIED OF THEIR RIGHT TO CANCEL.
 V. THE COURT IMPROPERLY DETERMINED THAT BECAUSE THE HOME IMPROVEMENTS WERE AFFIXED TO THE HOUSE THERE COULD BE NO RECISSION OF THE CONTRACT WITHOUT MAKING A RETURN OF THE ITEMS THAT WERE INSTALLED.
Appellees/cross-appellants complain:
 THE TRIAL COURT ERRED IN NOT AWARDING ATTORNEYS FEES TO THE PREVAILING PARTY.
In their first and second assignments of error, appellants complain that the trial court erred in failing to grant their motion for default judgment against the Continental defendants for their failure to timely answer the complaint and permitting appellees, upon oral motion, to file their answer to the complaint the morning of trial. We do not agree.
Civ.R. 6 (B) provides in relevant part that:
 * * * the court for cause shown may at any time in its discretion * * * permit the act to be done where the failure to act was the result of excusable neglect.
"A trial court's Civ.R. 6 (B) (2) determination is addressed to the sound discretion of the trial court and will not be disturbed on appeal absent a showing of an abuse of discretion. (Citations omitted.)" State ex rel. Lindenschmidt v. Butler Cty. Bd. ofCommrs. (1995), 72 Ohio St.3d 464, 465. The term abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
"The determination of whether neglect is excusable or inexcusable must take into consideration all the surrounding facts and circumstances, and courts must be mindful of the admonition that cases should be decided on their merits where possible, rather than procedural grounds. Marion ProductionCredit Assn. v. Cochran (1988), 40 Ohio St.3d 265, 271;533 N.E.2d 325, 331." Lindenschmidt, supra at 466. "Although excusable neglect cannot be defined in the abstract, the test for excusable neglect under Civ.R. 6 (B) (2) is less stringent than that applied under Civ.R. 60 (B)." Id. at 466.
The record before us reveals the within matter was a refiling of Common Pleas case number CV-305392. Due to clerical error, the answer filed by appellees contained that previous case number, not the new case number assigned. Thus, the answer, although filed by appellees in October, was not journalized by the court in the within case at the time of filing due to this clerical error. However, the record demonstrates that appellants were both properly served with this answer and they did, in fact, receive the answer. Thus, appellants were aware of the answer filed and its contents which were inadvertently filed with the incorrect case number. Moreover, the record supports the conclusion that for the entire pendency of the matter the court and the parties had conducted the case as if the answer had been appropriately filed. The morning of trial, upon appellants' oral motion for default judgment against the Continental defendants for their failure to answer the complaint, the trial court ascertained that appellees' answer proffered for filing on the morning of trial contained no surprise or language different from the answer with which appellants had been served ten months before. The court, having determined that no prejudice to appellants could be shown, stated "I will grant leave to file a tardy answer under these circumstances for excusable neglect on the basis that these defendants perceived incorrectly that they had filed an answer by filing it in the previous case.
In considering the facts and circumstances of the case, we find no abuse of the trial court's discretion in permitting appellees to file their answer to the complaint the morning of trial and denying appellants' motion for default judgment. Appellants' first and second assignments of error are not well taken.
In their third assigned error, appellants contend that the trial court erred in its determination that defendants were exempt from the Home Solicitation Act under the exception found in R.C. 1345.21 (A) (4). Appellees in defense to appellants' claim for recission argued that the Home Solicitation Sales Act does not apply to this transaction because of the exception found in R.C. 1345.21 (A) (4). Specifically, in reliance on Clemens v.Duwell (1995), 100 Ohio App.3d 423, appellants contend the evidence presented was insufficient to support the trial court's conclusion that appellees had a "business establishment."
R.C. 1345.21 (A) provides that a Home Solicitation Sale does not include a transaction in which:
 (4) The buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods and services involved in the transaction are regularly offered or exhibited for sale;
"The party seeking to assert the protection of an exemption from an otherwise mandatory statute bears the burden of proving the facts warranting the exception. Schaefer v. Montgomery Cty.Bd. of Commrs. (1967), 11 Ohio App.2d 132, 40 O.O.2d 296,229 N.E.2d 88." Clemens, supra at 427-428.
The first element of the statutory exception is met where the record demonstrates that appellants initiated the contact with Continental. Thus, the question before the trial court was whether Continental had a business establishment at a fixed location in the state where the goods and services involved were regularly offered or exhibited for sale.
Appellants complain that the evidence did not support the determination of the trial court which found "* * * defendant has sufficiently demonstrated that exception and [found] that that exception therefore applies."
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. Morris Co. v. Foley Construction Co. (1978),54 Ohio St.2d 279. In considering whether the judgment of the trial court is against the manifest weight of the evidence, it is important that the court of appeals be guided by a presumption that the findings of the trier-of-fact are correct. Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77.
We find the circumstances of Clemens v. Duwel, supra, relied upon by appellants, to be distinguishable from the facts here. In Clemens, the evidence revealed that his office was in a room in the back of the second floor of his residence. There was no separate entrance, it was necessary to walk through his house to get to the office. Clemens engaged in no advertising, not even a listing in the phone book, for his business. Clemens did not present any evidence that customers generally knew about his home office or that he regularly invited customers to come to his office. Significantly, "Duwel testified that he did not know where Clemens' business was located and that he was never invited to visit Clemen's home office." Id. at 429.
Under those circumstances, the Clemens court found that the record was devoid of any evidence that the consumer knew that he had the option of going to the seller's business location to complete the transaction. Thus, the court found the home office which was not open to the general public nor in any manner advertised as a place of business, did not constitute a "business establishment." Id. at 430.
Such is not the case here. Appellants at all times were aware of the business location of Continental. Contimental's address and phone number were on all the documents pertaining to the transaction. The evidence demonstrated that Continental maintained an office in a carpeted garage, an adjacent room and showroom in the basement of a residential property. The address was on all billing forms, stationery and business cards. The business advertised in newspapers and in the "yellow pages." Six employees worked out of the office and subcontractors, suppliers and customers regularly came into the office. The offices maintained six phone lines separate from the residence with phones located in the office. Moreover, cabinets, flooring and other construction items and samples were on site.
Thus, unlike the circumstances in Clemens, here the record demonstrates that: Continental advertised its location in newspapers and telephone directories; these consumers as well as other consumers knew the business location; the location was frequented by subcontractors, suppliers and customers doing business with Continental; employees worked out of the office and were on site during working hours; business phones were used; the office was available through an outside entrance without having to walk through the living quarters of the residence; and goods and services were offered for exhibit and sale.
As such, competent and credible evidence supports the conclusion of the trial court which found appellees met their burden of proving the exception in R.C. 1345.21 (A) (4). Accordingly, we find appellants' third assignment of error to be without merit.
Therefore, we affirm the trial court's finding that appellees met the exception to the Home Solicitation Sales Act. Accordingly, assignments of error four and five are rendered moot and need not be addressed. App.R. 12 (A) (1) (c).
In their cross-appeal, appellees complain that the trial court erred in not awarding attorneys fees to them as the prevailing party. Specifically, appellees contend that the evidence demonstrates that appellants maintained a groundless action in bad faith and as such should be required to pay attorneys fees.
It is a general rule that a prevailing party may not recover attorney fees as costs of litigation in the absence of statutory authority unless the breaching party has acted in bad faith, vexatiously, wantonly, obdurately or for oppressive reasons.Gahanna v. Eastgate Properties, Inc. (1988), 36 Ohio St.3d 65,66.
R.C. 1345.09 (F) (1) provides that the court may award to the prevailing party a reasonable attorneys fee limited to the work reasonably performed if the consumer brought or maintained an action that is groundless and the consumer filed or maintained the action in bad faith.
R.C. 1345.09 (F) reposes broad discretion in the trial court to grant or deny attorney fees. An appellate court may reverse only for an abuse of discretion. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore, supra; Couto v. Gibson, Inc. (1990),67 Ohio App.3d 407. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court, but must be guided by a presumption that the findings of the trial courts are correct. In re Jane Doe1 (1991), 57 Ohio St.3d 135.
 Courts in other jurisdictions have held that a claim is "groundless," for purposes of assessing attorney fees, if the allegations in the complaint, while sufficient to survive a motion to dismiss for failure to state a claim, are not supported by credible evidence at trial. Bilawsky v. Faseehudin
(Colo.App. 1995), 916 P.2d 586, 590. This test assumes that the proponent has a valid legal theory but can offer little or nothing in the way of evidence to support the claim. Id. See, also, Kahn v. Cundiff (Ind.App. 1989), 533 N.E.2d 164, 171
(claim is "groundless," within meaning of statute permitting award of attorney fees as costs, if no facts exist which support legal claim relied on and presented by the losing party). Palmer v. Daniel Froth Sons Builders (May 19, 1998), Franklin County App. No. 97APE08-1050, unreported.
We find that since appellants' complaint was arguably neither groundless nor brought in bad faith, the trial court did not abuse its discretion in denying appellees' motion for attorney's fees. Appellees' sole cross-assignment of error is not well taken.
Judgment affirmed.
It is ordered that the parties equally share the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue-out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
BLACKMON, J. and KILBANE, J., CONCUR.
 ______________________________ TIMOTHY E. McMONAGLE PRESIDING JUDGE