**TEETERS CONSTRUCTION**

v.

**DORT et al.**

Franklin County Municipal Court, Ohio.

No. 2005 CVF 050001.

Decided Dec. 13, 2006.

2

4

**6**

Curry, Roby, Schoenling & Mulvey Co., L.L.C., and David R. Kostreva, for plaintiff.

Clark & Lowe, L.L.C., and David K. Lowe, for defendants.

JULIA L. DORRIAN, Judge.

## INTRODUCTION

{¶ 1} The court trial was held September 6, 2006. Plaintiff was represented by attorney David R. Kostreva. Defendant was represented by attorney David Lowe. Plaintiff's representative Brian Teeters was present. Defendants Scott E. Dort and Nicole Gomer were present. Court reporter was present. Sworn testimony was taken.

{¶ 2} The court finds judgment for defendant on their counterclaim in the amount of $15,000 plus interest at the statutory rate from the date of judgment, costs, and reasonable attorney fees. The court further finds judgment for defendant on plaintiff's complaint. Plaintiff's complaint is dismissed.

## FINDINGS OF FACT

{¶ 3} In April 2003, defendants Dort and Gomer experienced wind and hail damage to their home at 2425 Sawbury Blvd. in Columbus. The roof, siding, and four windows were damaged by the storm. Defendants Dort and Gomer co-own the house.

{¶ 4} Shortly after the storm, witness Jason Riley was visiting defendants' neighbor, witness Bill Price Sr., at Price's home at 2424 Sawbury Blvd. Riley was at the time a salesman working for plaintiff.

{¶ 5} According to Riley, Price told him that defendant Dort wanted to talk with him. Therefore, Riley approached defendant, who was outside, and asked whether he was interested in an estimate. Defendant indicated that he was. They then exchanged information, and Riley told defendant he would contact him later. Defendant told Riley to come by next time he was at Price's house. Defendant testified that Riley was going house-to-house and that he asked defendant if defendant knew if his neighbors were home. Price testified that his memory is bad but that he "probably" would have referred Riley to defendant. Witness Price testified that there were a lot of "storm chasers" in the neighborhood at that time, canvassing door-to-door for business in repairing storm damage. However, Price said that Riley was not one of them.

{¶ 6} Price learned about plaintiff at a home show where plaintiff had a display. Price did not go to a showroom. Teeters is the owner and president of plaintiff Teeters Construction. He testified that in 2003 Teeters Construction had a 4800–square–foot office and showroom located in Gahanna at 5728 Westbourne Avenue. The showroom was open 8:00 a.m. to 5:00 p.m., staffed by ten employees, and open to the public. According to Teeters, it displayed Pella and Marvin windows and different brands of vinyl siding and roofing. Defendant Dort testified that there was no discussion of a showroom with him and he had no knowledge that a showroom existed. On cross-examination, Teeters testified that he had no photographs, advertisements, or Yellow Pages entries showing that the showroom existed.

{¶ 7} Riley could not recall whether he or defendant initiated the scheduling of an April 30, 2003 meeting. At that meeting, Riley gave to defendant plaintiff's Exhibits 1, 2, and 3, which were the estimates for siding, roofing, and windows respectively. Defendant Dort testified that Riley brought samples of siding, including Certainteed and LP siding to that meeting.

{¶ 8} Plaintiff's Exhibits 1, 1a, 1b, 2, 3, and 4 did not contain any warranty language. On cross-examination, Teeters, conceding that the contract did not contain written language regarding a warranty, testified that the manufacturer provided the warranty on the product. He stated in his deposition that plaintiff would stand behind the installation always. However, on direct examination when plaintiff presented rebuttal evidence, Teeters said that plaintiff would stand behind the work for the first year. Teeters indicated that plaintiff's warranty on improper labor is not written, but rather it is done in good faith. Plaintiff does not warranty the product. Riley testified that he verbally told defendant that plaintiff will fix improper installation up to one year. He conceded that the warranty is not in the contract, implied or otherwise. Riley stated that the date of signing the contract triggered the warranty. Defendant Dort stated that Riley explained that the warranty would run from the time the materials were placed

on the house until the house changed ownership and that the warranty would cover materials and labor. Defendant indicated that he would not have contracted with plaintiff if there was no warranty or if the warranty was for only one year from the date of contract, as Riley testified at trial. The warranty was to apply to roofing, windows, and siding. Defendant understood that the warranty was to be for as long as he owned his house.

{¶ 9} On May 13, 2003, defendant Dort signed a contract to hire plaintiff to install siding, install four windows, and repair the roof. See Plaintiff's Exhibits 1, 2, 3, and 4; Defendants' Exhibits C, D, E, and F. Defendant, after having submitted the estimates to his insurance company, agreed to pay plaintiff $5,786 for the siding, $2,900 for the roof, and $1,500 for the windows, for a total of $10,186. On May 13, 2003, defendant deposited with plaintiff $2,050 as a down payment. Plaintiff's Exhibit 4; defendants' Exhibit F. Defendant was not provided a receipt or any written statement regarding whether the deposit was refundable and, if so, under what circumstances. In a font that appears to be smaller than ten-point type, the contract stated, "You, the buyer, may cancel this transaction at any time prior to midnight of the third business day after the date of this transaction. See attached notice of cancellation for an explanation of this right." No attachment accompanied the contract, and the contract did not contain the language required by R.C. 1345.23(B)(2). Defendant was not provided any other written notice of cancellation. Riley never verbally informed defendants of a refund or cancellation policy. Further, Riley never gave defendant a list of the materials or a breakdown of labor or informed defendant that subcontractors would perform the work. On August 6, 2004, defendant Gomer paid plaintiff another $2,320. Plaintiff's Exhibit 5; Defendants' Exhibit A.

{¶ 10} On May 21, 2003, defendant originally selected Certainteed siding in a natural clay color (Defendants' Exhibit E; Plaintiff's Exhibit 1), then changed to a rustic cedar color (Plaintiff's Exhibit 1; Defendants' Exhibit H), for which plaintiff was going to charge him an additional $532 for the change. However, the rustic cedar color was discontinued, so defendant selected a new product, LP siding, in a mahogany color. Plaintiff's Exhibit 1b; Defendants' Exhibit G. Plaintiff ordered and paid $2,869.78 to Modern Builders Supply for the LP siding materials. Plaintiff's Exhibit 1c. On behalf of plaintiff, witness Wiseman, as a subcontractor, installed the siding in June 2003. Wiseman testified that when he was installing the siding some of the panels were oil-canning and were very hot. Wiseman could smell the heat and he noted that the siding was expanding much more than normal. Defendant Dort testified that Wiseman told him that Teeters told Wiseman to proceed with the installation even though Wiseman advised him not to. However, Teeters testified that Wiseman did inform him at the time of the original installation that a couple of pieces of siding were warping and bowing

but not that they were oil-canning, burning, or smelling, and that he told Wiseman to contact the supplier and get new pieces. Wiseman testified that "we" called in and "they" sent out some siding to fix the few bad panels. After the siding was installed, Wiseman went out later to fix it and noted again that the siding was hot and there was a smell of heat coming from the siding as if it was melting.

{¶ 11} Shortly after the initial installation of siding, defendant Dort noticed that the siding had excessive popping noises, surface warping, and seams separating. Defendant Dort testified that the siding was very hot to the touch even in the winter. Defendants' Exhibits K, L, M, and N. Defendant called plaintiff and asked them to investigate. Teeters came out, along with Bradco, the distributor, and LP, the manufacturer. Plaintiff tried to resolve the matter with LP. Plaintiff's Exhibit 7. After that visit, defendant did not hear anything from plaintiff, and therefore in March 2004, defendant contacted the manufacturer, LP, directly and pursuant to LP's instructions sent in a sample of siding and made a warranty claim. Defendants' Exhibits O, P, and Q. LP determined that the siding installed on defendants' home was defective and should not have been distributed. According to defendant's instructions, LP contacted plaintiff to inform plaintiff. In April 2004, defendant Dort directed LP to send the check for the cost of new siding to plaintiff. LP paid Teeters $5,395.49. Defendants' Exhibit R. Plaintiff purchased the siding for the reinstallation from Bradco and B & T Distributors for $2,725.49. The labor for the installation was valued at $2,350 by the plaintiff. Plaintiff's Exhibits 7, 7a, and 7b.

{¶ 12} On August 6, 2004, Riley returned to defendant's house to do the paperwork for the reinstallation of siding. Defendants' Exhibit J; Plaintiff's Exhibit 6. At that meeting, Riley and defendant Dort never discussed the balance remaining on defendant's bill for the original installation. According to Teeters, defendant still owed $5,148 (which included the $532 for the add change) on the siding and $1,200 on the windows. Plaintiff's Exhibit 5. The roof was paid in full. However, defendant thought plaintiff "would live up to their warranty" and told Riley to write down on the paperwork that it was "per warranty issue." Defendant thought and understood that this would satisfy the remaining balance. Defendant believed the LP check constituted payment in full to plaintiff. Defendant Dort testified that he does not believe the statement "payment on original contract due after completion of this job" was on Plaintiff's Exhibit 6 or Defendants' Exhibit J at the time defendant signed it. Wiseman reinstalled the siding on defendant's house in August 2004. Defendant completed Plaintiff's Exhibit 9 shortly thereafter.

{¶ 13} Wiseman testified that prior to the initial installation, he informed defendant to remove items from the interior walls so they would not break from

hammering on the exterior walls. Wiseman has been in the business of siding installation for 15 to 18 years. Although not an expert, he testified according to his personal knowledge that nail pops occur when drywall is not installed properly and a drywall nail is not properly nailed into the two-by-four stud. Defendants owned their home since 1998, and no construction work had been performed on the home with the exception of the work on the garage door. Wiseman testified that he did not know whether hammering on exterior wall could produce nail pops on interior walls, because he never had a problem with that. Wiseman testified that he was never notified of nail pops in defendants' home after either the initial installation or the reinstallation. Defendant Dort testified that after the reinstallation of siding, he noticed nail pops in every room in his house opposite an exterior wall. First the pops appeared as lumps in the wall and then crumbled upon touch. Defendants' Exhibits S and T. On August 3, 2006, defendants' expert witness Grashel observed and photographed the nail pops. Defendants' Exhibits B17–19. Grashel testified that nail pops rarely occur with a siding installation. He also testified that nail pops occur in a house three to four years old or older only if something extraordinary is happening. However, with two siding installations, he opined that the reinstallation prying and hammering proximately caused the nail pops.

{¶ 14} Defendants' expert witness Grashel has 55 years' construction experience as a builder, remodeler, and mechanical expert. He was the chief building inspector for the city of Bexley for 19½ years. He is a state-certified building inspector and a member of the American Society of Home Inspectors. He has been qualified as an expert in building construction in hundreds of cases since the 1970s. He has built many homes and additions and installed much siding and many roofs. This court qualified Grashel as an expert in building construction.

{¶ 15} Grashel visited defendants' home on August 3, 2006. He photographed the siding that was reinstalled in August 2004, the roof repaired in 2003, and the windows installed in 2003. Defendants' Exhibit B. Grashel testified that he observed ripples, gaps, dents, and dings in the siding. Grashel testified that he has personally used Wiseman to install siding on his house and that Wiseman is very qualified and basically does a good job. Grashel opined within a reasonable degree of construction-industry certainty that the siding was mostly reinstalled in a workmanlike manner.

{¶ 16} In addition to installing the siding, plaintiff installed four new windows for defendant in 2003 at the time of the initial siding installation. Defendant testified that since the installation of windows, he has observed fogging on the windows, water running down the windows, bowing, and difficulty in opening them. Riley testified that he went out to the house and lubricated the windows and was able to open them. Defendants' expert witness Grashel photographed

and observed problems with the windows. Defendant's Exhibit B. He observed the windows bowing and not straight or plumb. He observed gaps around the windows and uneven sashes showing. He testified that there were 1/8–to–1/2–inch gaps between the windows and siding and that in some cases the windows were hung improperly. He conceded that he did not put the level on top of the windows to see if they hung level, but stated that either the trim or window is not straight. Grashel was able to open the windows with no problem. However, he opined within a reasonable degree of certainty that the windows were not installed in a workmanlike manner.

{¶ 17} Plaintiff also installed a new ridge vent on defendants' roof. Defendant wanted a high-profile ridge vent rather than a low-profile vent. Riley recommended the low-profile vent for the type of roof on defendants' house, and according to defendant, Riley told defendant that if he wanted the high-profile vent he would have to waive the warranty. Defendant said he would not waive the warranty, and therefore plaintiff installed the low-profile vent against defendant's wishes. Defendant Dort testified that the gable vent fell off numerous times. Defendants' Exhibits L, X, and Y. He also testified that he found moisture at the peak. Defendants' Exhibit Y.

{¶ 18} Defendants' expert witness Grashel testified that he may have seen the original estimates from Teeters for the roof, siding, and windows and that he believed the estimate should have been higher than $10,000. Grashel testified that overall Teeters did a good job but that repairs needed to be done in the amount of $5,000 to $10,000. He testified that the most labor-intensive work would be the repairs to the interior walls, which would include respackling, sanding, and repainting. Grashel testified on cross-examination that in arriving at this estimate he considered the estimates for repair that defendant obtained from Rosati for the windows, Defendants' Exhibit V, and from handyman Matters for the interior walls, Defendants' Exhibit U. Defendants' Exhibits V and U were not admitted into evidence upon objection from plaintiff and consideration by the court. Defendant proffered the exhibits upon the court's ruling.

## ANALYSIS AND CONCLUSIONS OF LAW REGARDING DEFENDANTS' COUNTERCLAIM

{¶ 19} This court will first analyze and make conclusions of law with respect to defendants' counterclaim then follow with analysis of plaintiff's complaint.

{¶ 20} Defendant alleges in his counterclaim that plaintiff violated the Home Solicitation Sales Act ("HSSA") and the Consumer Sales Practices Act ("CSPA"). Defendant further alleges that plaintiff breached the contract with defendant, engaged in negligence by failing in his duty to install the roof, windows, and siding in a workmanlike manner, breached the implied warranty of fitness for a

particular purpose, and breached plaintiff's own express warranty covering work, labor, and materials for one year.

## Home Solicitation Sales Act

{¶ 21} Defendant makes several allegations against plaintiff regarding violations of the Home Solicitation Sales Act.

{¶ 22} R.C. 1345.21(A) defines "home solicitation sale" as a sale of consumer goods or services in which the seller or a person acting for the seller engages in a personal solicitation of the sale at a residence of the buyer, including solicitations in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is there given to the seller or a person acting for the seller, or in which the buyer's agreement or offer to purchase is made at a place other than the seller's place of business. R.C. 1345.21(E) defines "consumer goods or services" as "goods or services purchased, leased, or rented primarily for personal, family, or household purposes." Courts have found that home improvements are services subject to the HSSA.

{¶ 23} At first glance, the transaction between plaintiff and defendant for siding, roof and window products and installation constituted a "home solicitation sale" pursuant to these definitions. However, one exception to this definition is found in R.C. 1345.21(A)(4), which states, "['Home solicitation sale'] does not include a transaction or transactions in which * * * (A)(4) the buyer initiates the contact between the parties for the purpose of negotiating a purchase and the seller has a business establishment at a fixed location in this state where the goods or services involved in the transaction are regularly offered or exhibited for sale."

{¶ 24} In his answer to defendants' counterclaim, plaintiff did not assert as an affirmative defense the exception found in R.C. 1345.21(A)(4). Plaintiff did, however, attempt to argue the exception at trial. Defendant objected that by failing to raise the exception as an affirmative defense in his answer, plaintiff waived the defense.

{¶ 25} This court finds persuasive the holdings of the Fifth District Court of Appeals that research provides "no specific authority for the proposition that the R.C. 1345.21(A) exceptions must be pled in an answer or else be treated as waived" and that "the R.C. 1345.21(A)(4) exemption is not an affirmative defense and need not be raised pursuant to Civ. R. 8(C)." *Iiams v. Bullock Garages* (Sept. 20, 1999), 5th Dist. No. 98CA75, 1999 WL 770723, and *New Phila., Inc. v. Sagrilla*, 5th Dist. No. 2001 AP 040033, 2002-Ohio-3485, 2002 WL 1467771. The court therefore finds that plaintiff may raise R.C. 1345.21(A)(4) as an exception at trial.

{¶ 26} The burden of proving the exception is on the seller, in this case the plaintiff. *Gallagher v. O'Connor,* 2d Dist. No. 19702, 2003-Ohio-5095, 2003 WL 22220337; *Chegan v. AAAA Continental Heating* (Nov. 24, 1999) 8th Dist. No. 75190, 1999 WL 1068366; and *Rosenfield v. Tombragel* (Dec. 31, 1996), 1st Dist. No. C–950871, 1996 WL 741988. "A party that seeks the protection of an exemption from a mandatory statute has the burden of proving the facts warranting the exception." *Gallagher,* at ¶ 14, citing *State ex rel. Schaefer v. Montgomery Cty. Bd. of Commrs.* (1967), 11 Ohio App.2d 132, 40 O.O.2d 296, 229 N.E.2d 88. "In order to fall within this exception, the seller must prove (1) that the buyer initiated the contact between the parties for the purpose of negotiating a purchase, (2) that the seller had a business establishment at a fixed location in Ohio, and (3) that the goods or services involved in the transaction were regularly offered or exhibited for sale at this fixed location." Id., citing *R. Bauer & Sons Roofing v. Kinderman* (1992), 83 Ohio App.3d 53, 613 N.E.2d 1083.

{¶ 27} The court finds that the seller, plaintiff, has not met the burden of proving that the R.C. 1345.21(A)(4) exception applies. Although Teeters testified that he had a 4,800–square–foot office and showroom that was open to the public, Price never went to a showroom. Defendant Dort testified that the showroom was never discussed with him and he was not even aware that a showroom existed. "Where 'the record is devoid of any evidence the consumer knew that he had the option of going to the seller's business location to complete the transaction, the evidence cannot support a finding that the consumer actually had an opportunity to do so.'" *Kamposek v. Johnson,* 11th Dist. No. 2003–6–124, 2005-Ohio-344, 2005 WL 238152, ¶ 19, quoting *Clemens v. Duwel* (1995), 100 Ohio App.3d 423, 654 N.E.2d 171. Further, no evidence was presented that the siding, windows, and roofing involved in this transaction were regularly offered or exhibited for sale at the showroom. Plaintiff said he showed Pella and Marvin windows, but defendant ordered Vista Panarama windows. Plaintiff said he showed different brands of siding and roofing, but he did not specifically testify that he showed Certainteed siding or roofing or LP siding. Finally, the building and installing of these products could not be regularly offered or exhibited for sale at a fixed location. Therefore, pursuant to *Cook v. Stevens* (1988), 44 Ohio App.3d 135, 541 N.E.2d 628, the exception does not apply. Therefore, the court finds that the transaction between plaintiff and defendants was not exempted from the HSSA.

{¶ 28} Defendants allege several violations of the HSSA. The court finds that plaintiff failed to include on the contract the statement of the buyer's right to cancel as required by R.C. 1345.23(B)(1) of the HSSA. Although the text was included, there is no evidence that it was printed in boldface type of the minimum size of ten points. Courts have noted that the statute does not provide for

substantial compliance, but unequivocally sets forth certain information that must be included and, in fact, provides the seller with the entire form that the seller may use to avoid any question of compliance. *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 546 N.E.2d 487.

{¶ 29} The court also finds that the plaintiff failed to give defendants a "Notice of Cancellation" form as required by R.C. 1345.23(B)(2) of the HSSA. No attachment accompanied the contract, and defendants were never provided in writing or verbally with a notice-of-cancellation form. The court further finds that plaintiff failed to include any notices to defendants of the date by which defendants could cancel and the name and address to which the defendants were to send their notice of cancellation as required by R.C. 1345.23(B)(2) and 1345.23(B)(3) of the HSSA.

## Consumer Sales Practices Act

{¶ 30} Defendant makes several allegations against plaintiff regarding violations of the Consumer Sales Practices Act ("CSPA").

{¶ 31} R.C. 1345.01(A) defines "consumer transactions" as a "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." The agreements between plaintiff and defendants constituted "consumer transactions" pursuant to this definition.

### Unfair and Deceptive Acts

{¶ 32} In considering whether a defendant committed unfair or deceptive acts pursuant to the CSPA, the court must look to four sources. First, the court must look to R.C. 1345.02(A) and in so doing must consider that " 'the place to look to determine the presence of a deception is in the state of mind of the consumer, and not at the intent of the supplier. Thus, if the supplier does or says something, regardless of intent, which has the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts, then the act or statement is deceptive.' " *Karst v. Goldberg* (1993), 88 Ohio App.3d 413, 418, 623 N.E.2d 1348, quoting *Brown v. Bredenbeck* (C.P.1975), 2 O.O.3d 286, 287.

{¶ 33} This court finds that the plaintiff, by his own words, did induce in the mind of the defendant a belief that is not in accordance with the facts. In particular, plaintiff's words regarding express warranties on the installation of the roof, windows, and siding led defendant to believe that the warranty would be for as long as he owned his house. At trial, plaintiff acknowledged that in his deposition he testified that the warranty would always cover the work; however. he later stated that the warranty would last only for one year. Plaintiff's

witnesses' divergent testimony and understanding of the duration of its own express warranty supports defendant's testimony that plaintiff told him yet another version of the duration of the warranty. Therefore, the court finds that plaintiff violated R.C. 1345.02(A) of the CSPA and acted in an unfair and deceptive manner.

{¶ 34} Second, the court must look to R.C. 1345.02(B) to determine whether there was a per se unfair or deceptive violation. Defendant identifies four specific per se violations in its counterclaim:

    a. That the subject of the consumer transaction has performance characteristics, or benefits that it does not have, R.C. 1345.02(B)(1);

    b. That the subject of the consumer transaction is a particular standard, quality, grade, style, which it was not, R.C. 1345.02(B)(2);

    c. That the consumer transaction has been supplied in accordance with a previous representation when it has not, R.C. 1345.02(B)(5); and

    d. That the products provided pursuant to the consumer transaction involved a warranty, which such representation was false, R.C. 1345.02(B)(10).

{¶ 35} This court finds that plaintiff committed all four of the per se violations raised by defendants and found in R.C. 1345.02(B). The evidence presented shows that the siding and windows, the installation thereof, and the express warranty relating thereto did not have the performance characteristics or benefits that plaintiff represented they would have, were not of the particular standard and quality that plaintiff represented they would be, and were not supplied in accordance with previous representations. As explained in more detail later, the court finds that plaintiff represented that an express warranty existed and has yet to repair the faulty installation of siding and windows. Thus, plaintiff's representation as to warranty was false. Therefore, the court finds that plaintiff violated R.C. 1345.02(B) of the CSPA and acted in an unfair and deceptive manner.

{¶ 36} Third, pursuant to R.C. 1345.09(B), the court must look to the substantive rules adopted by the attorney general in Ohio Adm.Code Chapter 109:4–3 pursuant to R.C. 1345.05(B)(2). Defendant identifies four specific rule violations:

    a. Fail to disclose to the consumer prior to the commencement of any repair or service, that any part of the repair or service will be performed by a person other than the supplier or his employees if the supplier disclaims any warranty of the repair or service performed by that person, the nature of the repair service which that person will perform, and if requested by the consumer, the identity of that person. O.A.C. 109:4–3–05(D)(16).

b. Fail to conform to the requirements of Section 1345.21 to 1345.27 (The Home Solicitation Sale Act and specific provisions relating to cancellation.) O.A.C. 109:4–3–11(A)(5).

c. Fail to include on the receipt for deposit whether the deposit was refundable, and/or under what conditions it was refundable in violation of O.A.C. 109:4–3–7(B)(5).

d. Fail to provide a list of repairs performed, list of materials used and costs of labor in violation of O.A.C. 109:4–3–05(D)(12).

■■■ {¶ 37} As outlined above, this court found that plaintiff violated the HSSA at R.C. 1345.23 and thus finds that plaintiff violated Ohio Adm.Code 109:4–3–11(A)(5) by failing to conform to R.C. 1345.23. This court also finds that plaintiff violated Ohio Adm.Code 109:4–3–07(B)(5) by failing to provide information to defendant regarding whether the deposit is refundable and under what conditions. Further, this court finds that although plaintiff provided defendant with a list of repairs or services to be performed and a list of the materials to be used, plaintiff simply stated that the cost would include "all materials, labors, cleaning and haul of all debris." Plaintiff did not break down the cost of labor, separate from the materials. Therefore, the court finds that plaintiff violated Ohio Adm.Code 109:4–3–05(D)(12). This court does not find, however, that plaintiff violated Ohio Adm.Code. 109:4–3–05(D)(16), because although there was evidence that someone other than plaintiff would perform the installation, specifically Wiseman, an independent contractor, no evidence was presented that the plaintiff disclaimed any warranty of the service performed by Wiseman. Therefore, the court finds that plaintiff violated Ohio Adm.Code 109:4–3–11(A)(5), 109:4–3–07(B)(5) and 109:4–3–05(D)(12) and acted in an unfair and deceptive manner.

{¶ 38} Fourth, pursuant to R.C. 1345.09(B), the court must look to case law to determine whether plaintiff violated the CSPA by committing unfair and deceptive acts. Defendant identifies several violations that had previously been decided by courts in this state, with those decisions having been made available for public inspection pursuant to R.C. 1345.05(A)(3):

a. Plaintiff failed to perform services in a competent, satisfactory and workmanlike manner and then failed or refused to correct the substantial work or defect. *Maimend v. Day*, Case No. 89–2411 (PIF No. 1095); *Celebrezze v. Goldstein American Builder & Supply Co.*, Case No. 53110 [1983 WL 197499] (PIF No. 3916).

b. That the Plaintiff knowingly breached its contract with the Plaintiffs. *Brown v. Spears*, Case No. 8897 [1979 WL 52451] (PIF No. 10000403).

c. Failure to honor express warranties. *Brown v. Lyons*, 43 Ohio Misc. 14 [72 O.O.2d 216, 332 N.E.2d 380] (PIF No. 10000304); *Celebrezze v. Capital Basement Waterproofing*, Case No. 86 CV–10–6776 (PIF No. 100001096).

d. That the Plaintiff failed to include all material statements in the written contract. *Montgomery v. Automotive Warranty Corporation*, Case No. 02 CVH 07–83866 (PIF No. 10002104).

e. Plaintiffs' failure to comply with the HSSA, Chapter 1345.21 and O.A.C. 109: 4–3–11. *Beckman v. Squire*, Case No. 96 CV 117632 [1999 WL 123605] (PIF No. 10001860).

f. That Plaintiff made misleading statements or statements of opinion to Defendants at the time they signed the contract, which Plaintiff knew that Defendants would rely on to their detriment. *Montgomery v. Marcum*, Case No. 01 CVH 04–03650 (PIF No. 10002049).

g. Plaintiff failed to include in the written contract, all material statements, representations, or promises, oral or written, made prior to the written contract or by the supplier. *Ladarkis [Lardakis] v. Martin*, Case No. CV94–01–0234 [1994 WL 912251] (PIF No. 10001436).

h. Plaintiff did not inform buyer that he employed subcontractors to perform such services and did not identify the particular subcontractor. *Fisher v. Zoldan: Queen City Energy*, Case No. A9401932 (PIF No. 10001462).

{¶ 39} The court finds, based on the evidence presented in this case and in particular the testimony of expert witness Grashel regarding installation of the windows and the cause of nail pops, that plaintiff failed to perform services in a competent, satisfactory, and workmanlike manner and then failed or refused to correct the substantial work or defect. Therefore, pursuant to *Maimend v. Day*, case No. 89–2411 (PIF No. 1095), the plaintiff has committed unfair and deceptive acts in violation of the CSPA.

{¶ 40} The court also finds, as outlined above, that plaintiff failed to comply with the HSSA, specifically R.C. 1345.23, and therefore, pursuant to *Beckman v. Squire*, case No. 96 CV 117632, 1999 WL 123605 (PIF No. 10001860) plaintiff has committed unfair and deceptive acts in violation of the CSPA.

{¶ 41} The court further finds that plaintiff made misleading statements regarding the duration of an express warranty on the installation at the time of signing the contract, which plaintiff knew defendants would rely on to their detriment. Therefore, pursuant to *Montgomery v. Marcum*, case No. 01CVH 04–03650 (PIF No. 10002049), plaintiff has committed unfair and deceptive acts in violation of the CSPA.

18

■ {¶ 42} The court finds that plaintiff did fail to include in the written contract the express warranty and duration thereof and therefore failed to include all material statements, representations, and promises made prior to the written contract. Therefore, pursuant to *Lardakis v. Martin* and *Montgomery v. Automotive Warranty Corp.*, plaintiff has committed unfair and deceptive acts in violation of the CSPA.

■ {¶ 43} The court also finds that plaintiff did not inform defendant that subcontractors would be employed to perform the services and did not identify the particular subcontractor who would perform the service. Therefore, pursuant to *Fisher v. Zoldar: Queen City Energy*, case No. A9401932 (PIF No. 10001462), plaintiff has committed unfair and deceptive acts in violation of the CSPA.

{¶ 44} For reasons outlined later in this decision, the court also finds that plaintiff knowingly breached its contract with defendant and failed to honor express warranties, and therefore finds that plaintiff violated the CSPA pursuant to *Brown v. Spears*, case No. 8897, 1979 WL 52451 (PIF No. 10000403), *Brown v. Lyons* (1974), 43 Ohio Misc. 14, 72 O.O.2d 216, 332 N.E.2d 380 (PIF No. 10000304), or *Celebreeze v. Capital Basement Waterproofing*, case No. 86 CV–10–6776.

*Unconscionable Acts*

{¶ 45} In considering whether a defendant committed unconscionable acts pursuant to the CSPA, the court must look to R.C. 1345.03 and must consider that "scienter is a necessary element which must be proven prior to an unconscionable act being found under R.C. 1345.03. R.C. 1345.01(E) defines 'knowledge' as actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness."

{¶ 46} The defendant identifies for the court to consider six specific factors in R.C. 1345.03(B):

a. Breaching an implied warranty of merchantability, as well as express warranties made to Defendants. (Not listed as a factor in R.C. 1345.03(B));

b. The supplier has knowingly taken advantage of the inability of the consumer reasonably to protect his interest because of his physical or mental infirmities, ignorance, illiteracy, or an inability to understand the language of an agreement, R.C. 1345.03(B)(1);

c. The supplier knew at the time that the consumer transaction was entered into, that the price was substantially in excess of the price of which similar property or services were readily obtainable in consumer transactions by like consumers, R.C. 1345.03(B)(2);

d.  The supplier knew at the time of the consumer transaction was entered into, the inability of the consumer to receive substantial benefit from the subject of the consumer transaction, R.C. 1345.03(B)(3);

e.  The supplier required the consumer to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the supplier, R.C. 1345.03(B)(5);

f.  The supplier knowingly made a misleading statement of opinion on which the consumer was likely to rely to his detriment, R.C. 1345.03(B)(6).

{¶ 47} Breach of implied warranty of merchantability or express warranty is not listed as a factor in R.C. 1345.03(B), and although through its own research, the court found case law declaring such a breach to be unfair and deceptive, *State ex rel. Petro v. Holt* (June 2, 2005), Franklin County C.P. No. 05CVH03–2786, 2005 WL 3867417, it did not find case law declaring such a breach to be unconscionable.

{¶ 48} The court does not find that the plaintiff violated R.C. 1345.03(B)(1). No evidence was presented that defendant had physical or mental infirmities or was ignorant, illiterate, or unable to understand the language of the contract.

{¶ 49} The court does not find that the plaintiff violated R.C. 1345.03(B)(2). Expert witness Grashel even testified that plaintiff's price was lower than what he has seen for the amount of work involved.

{¶ 50} Further, the court does not find that plaintiff violated R.C. 1345.03(B)(3). No evidence suggested that at the time the consumer transaction was entered into, the plaintiff knew the inability of defendant to receive substantial benefit from the siding, roof, and windows.

{¶ 51} The court does not find that the plaintiff violated R.C. 1345.03(B)(5). No evidence was presented to show that plaintiff required defendant to enter into a consumer transaction on terms the supplier knew were substantially one-sided in favor of the plaintiff.

{¶ 52} The court does find that the plaintiff knowingly made a misleading statement of opinion on which defendants were likely to rely to their detriment. Plaintiff's statement to defendants regarding an express warranty on the installation, plaintiff's inconsistent representation of the duration of the express warranty, and defendants' reliance thereon in entering into the contract support this finding. From this evidence, the court infers that plaintiff knowingly made the misleading statements. Therefore, the court finds that plaintiff did violate R.C. 1345.03(B)(6) and violated the CSPA by acting in an unconscionable way.

**Remedy for Violations of the Home Solicitation Sales Act and the Consumer Sales Practices Act**

*Cancellation*

{¶ 53} As a remedy for plaintiff's violation of the HSSA, defendants demand judgment (1) to require rescission of the contract, (2) to require cancellation of the contract, and (3) to find that defendants do not owe plaintiff any money pursuant to the contracts. The court will discuss the third request, whether defendants owe plaintiff money, in its analysis of plaintiff's complaint. The first request, rescission, will be discussed following the discussion of cancellation.

{¶ 54} For plaintiff's violations of the HSSA, defendants ask for cancellation of the contract. Plaintiff violated R.C. 1345.23(A) and (B). R.C. 1345.23(C) states that "until the seller has complied with divisions (A) and (B) of this section the buyer may cancel the home solicitation sale by notifying the seller by mailing, delivering or telegraphing written notice to the seller of his intention to cancel. The three day period prescribed by section 1345.22 of the Revised Code begins to run from the time the seller complies with divisions (A) and (B) of this section." Courts have found that where a seller fails to provide adequate notice of cancellation, a buyer's right to cancel never expires. *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 546 N.E.2d 487; *Dr. Goldstein's Audiologic Services v. Weizman* (July 14, 1999), Cleveland Heights M.C. No. CVF 9801270, 1999 WL 1422603. Plaintiff has not complied with R.C. 1345.23(A) and (B), and therefore defendants' right to cancel never expired.

{¶ 55} R.C. 1345.22 states, "Cancellation is evidenced by the buyer giving written notice of cancellation to the seller at the address stated in the agreement or offer to purchase." "Delivery of the notice of cancellation to the address of seller's legal counsel does not satisfy the express language of R.C. 1345.22. Thus * * * the appellee-buyer did not properly cancel the contract in question pursuant to R.C. 1345.22." *Camardo v. Reeder*, 8th Dist. No. 80443, 2002-Ohio-3099, ¶ 30. At trial, no evidence was presented that defendants sent notice of cancellation to plaintiff at the address stated in the contract. The court acknowledges that as the plaintiff did not provide a notice of cancellation pursuant to R.C. 1345.23(B), it could not have included in the notice the address of seller's place of business. The facts were similar in Camardo. Nevertheless, the documentary evidence, including Plaintiff's Exhibit 1, Plaintiff's Exhibit 1a, Plaintiff' Exhibit 1b, Plaintiff's Exhibit 2, Plaintiff's Exhibit 2a, Plaintiff's Exhibit 3, Plaintiff's Exhibit 4, Plaintiff's Exhibit 5, Plaintiff's Exhibit 6, and plaintiff's Exhibit 7, contains the address 5728 Westbourne Ave., Columbus, Ohio 43213, as plaintiff's address. Defendant Dort even sent plaintiff a letter at that same address in August 2005. Plaintiff's Exhibit 10. In defendants' amended answer and coun-

terclaim, defendants' attorney states in ¶ 14 of the first cause of action that "[b]y filing this Counterclaim, Defendants have hereby notified Plaintiff by mail that they are cancelling the transaction in question." The certificate of service attached to the counterclaim states that a copy of the counterclaim was served on plaintiff's counsel at 8000 Ravine's Edge Center, Columbus, Ohio 43235. Filing of a counterclaim and service thereof on plaintiff's counsel does not meet the requirements for cancellation under R.C. 1345.22, and therefore the court considers that defendants have not canceled the contract.

## Rescission

{¶ 56} Defendants also ask the court to rescind the contract as a remedy for violation of the HSSA in the first cause of action as well as for violations of the CSPA in the second cause of action. Pursuant to R.C. 1345.28, failure to comply with HSSA constitutes a deceptive act in violation of the CSPA, and therefore pursuant to R.C. 1345.09(A), defendants may pursue the remedy of rescission for violations of the HSSA as well as for violations of the CSPA. The Ohio Supreme Court, however, has held that "pursuant to R.C. 1345.09(C), rescission is not a proper remedy where there has been substantial change in the subject of the consumer transaction." *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 480 N.E.2d 802. R.C. 1345.09(C) also requires that rescission or revocation take place "within a reasonable time after the consumer discovers or should have discovered the ground for it and before any substantial change in condition of the subject of the consumer transaction." Defendants' home has undergone substantial change, with a new roof, windows, and siding. Therefore, this court finds that rescission is not available as a remedy to defendants for plaintiff's violations of either the HSSA or the CSPA.

## Return of All Money to Defendants

{¶ 57} For plaintiff's violations of the CSPA, defendants ask that the court order plaintiff to return to defendants all payments made. R.C. 1345.09 lists the remedies available to a consumer, in this case the defendant, for violations of the CSPA. R.C. 1345.13 states that such remedies are in addition to remedies otherwise available for the same conduct under state or local law. Neither R.C. 1345.09 nor any other authority proposed by defendant under state or local law provide for the return of consumer payments to a supplier. The HSSA, pursuant to R.C. 1345.23(D)(4), requires the refund of payments made under contract within ten days after receipt of a valid notice of cancellation. Nevertheless, this court has found that defendants did not provide plaintiff with valid notice of cancellation. Therefore, return of all payments to defendants is not available as a remedy to defendants.

*Damages, Trebled Pursuant to R.C. 1345.09(B)*

{¶ 58} For plaintiff's violations of the CSPA, defendants ask the court to award damages in an amount exceeding $5,000, trebled pursuant to R.C. 1345.09(B). R.C. 1345.09(B) states that for a CSPA violation a consumer "may rescind the transaction or recover * * * three times the amount of his actual damages or two hundred dollars, whichever is greater." As rescission is not available as a remedy to defendants, the court will now consider defendants' request for treble damages. Although multiple violations of the CSPA have occurred, they occurred within one consumer sales transaction and therefore multiple awards of statutory damages cannot be sustained. *Rosenfield v. Tombragel* (Dec. 31, 1996), 1st Dist. No. C–950871, 1996 WL 741988.

{¶ 59} Defendants' expert witness Grashel testified that defendants sustained damages between $5,000 to $10,000. Having listened to the testimonial evidence and viewed the photographic evidence, Defendants' Exhibits B1–18, K, L, M, and N, the court finds that defendants sustained $7,500 in damages. This amount exceeds $200, and therefore defendants are entitled to have the $7,500 trebled to $22,500. However, pursuant to R.C.1901.17 this municipal court has original jurisdiction only in those cases in which the amount claimed by any party does not exceed $15,000. In their trial brief, defendants recognize this court's monetary jurisdictional limit. Therefore, the court will limit its award to defendants to $15,000.

*Attorney Fees*

{¶ 60} For plaintiff's violations of the CSPA, defendants ask the court to award attorney fees pursuant to R.C. 1345.09(F)(2). R.C. 1345.09(F)(2) states that a court "may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply: * * * (2) the supplier has knowingly committed an act or practice that violates this chapter."

{¶ 61} This court has found that plaintiff knowingly made a misleading statement of opinion on which defendants were likely to rely to their detriment by giving inconsistent representations of the duration of the express warranty.

{¶ 62} Therefore, the court will set for separate hearing an opportunity to receive evidence on the proper amount of attorney fees.

{¶ 63} Attorney fees awarded pursuant to CSPA are costs and thus not subject to the $15,000 municipal court jurisdictional limit. *Bittner v. Tri–County Toyota, Inc.* (1992), 62 Ohio Misc.2d 345, 598 N.E.2d 925.

## Breach of Contract

{¶ 64} " 'A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing.' " *Barlay v.*

*Yoga's Drive Thru*, 10th Dist. No. 03AP–545, 2003-Ohio-7164, 2003 WL 23024481, ¶ 5, quoting *Lawler v. Burt* (1857), 7 Ohio St. 340; "To successfully prosecute a breach of contract claim, a plaintiff must present evidence of (1) the existence of a contract, (2) plaintiff's performance of the contract, (3) defendant's breach of the contract, and (4) plaintiff's loss or damage as a result of defendant's breach." Id. at ¶ 6, citing *Doner v. Snapp* (1994), 98 Ohio App.3d 597, 649 N.E.2d 42.

{¶ 65} The duty of a construction contractor to perform in a workmanlike manner is imposed by common law upon builders and contractors. Failure on the part of a builder or contractor to perform in a workmanlike manner constitutes a breach of contract, entitling the owner to damages. *Banks v. D'Andrea* (Sept. 22, 1994), 10th Dist. No. 94APG03–304, 1994 WL 521172, citing *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 518 N.E.2d 18.

{¶ 66} This court has found that plaintiff failed to install the siding and the windows in a workmanlike manner and therefore finds that plaintiff has breached the contract with defendants. However, as the court has already reached its jurisdictional monetary limit, it will now award additional damages.

**Negligence**

{¶ 67} To establish actionable negligence, it is fundamental that a plaintiff show the existence of a duty on the part of the defendant toward the plaintiff, a breach of that duty, and an injury proximately caused by the breach of duty. Where there is no duty or obligation of care or caution, there can be no actionable negligence. *Westfield Ins. Co. v. HULS Am., Inc.* (1998), 128 Ohio App.3d 270, 714 N.E.2d 934, citing *Mussivand v. David* (1989), 45 Ohio St.3d 314, 544 N.E.2d 265; *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 21 O.O.3d 177, 423 N.E.2d 467. See, also, *Jeswald v. Hutt* (1968), 15 Ohio St.2d 224, 44 O.O.2d 196, 239 N.E.2d 37; *Norwalk v. Tuttle* (1906), 73 Ohio St. 242, 76 N.E. 617; *Elster v. Springfield* (1892), 49 Ohio St. 82, 30 N.E. 274.

{¶ 68} The court finds that by failing to perform in a workmanlike manner, plaintiff was negligent in the second installation of siding, causing nail pops to the interior walls, and in the installation of the windows. However, as the court has already reached its jurisdictional monetary limit, it will not award additional damages for negligence.

**Breach of Implied Warranty of Fitness for a Particular Purpose**

{¶ 69} Defendants allege that plaintiff violated an implied warranty of fitness for a particular purpose on the work performed by plaintiff. Defendants have not established that the transaction in question is subject to the Ohio Uniform Commercial Code or that the statutory implied warranty of fitness for a particular purpose at R.C. 1302.28 applies. Therefore, the court will consider whether a common-law implied warranty of fitness for a particular purpose applies.

**■■** {¶ 70} The Tenth District Court of Appeals has declined to apply a common-law implied warranty of fitness for a particular purpose. In *Corporex Dev. & Const. Mgt. Inc. v. Shook, Inc.*, 10th Dist. No. 03AP–269, 2004-Ohio-1408, 2004 WL 557339, judgment reversed and remanded on other grounds, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701. Plaintiff alleged a breach of "implied warranty of workmanship and craftsmanship," in which it claimed the "building was not built by [defendant] to be fit and satisfactory for the purposes intended." The *Corporex* court turned to *Barton v. Ellis* (1986), 34 Ohio App.3d 251, 518 N.E.2d 18, and observed: "The duty to perform in a workmanlike manner is imposed by common law upon builders and contractors. * * * This duty is rooted in the English common law * * * and finds its first expression in Ohio law in *Somerby v. Tappan* (1833), Wright 229, and *Somerby v. Tappan* (1834), Wright 570, syllabus. * * * Subsequent developments in Ohio case law have rejected inferences from these earlier expressions upon which an implied warranty of fitness for a particular purpose might have been imposed by law * * * but have reaffirmed the duty to perform in a workmanlike manner." *Corporex*, at ¶ 54, quoting *Barton* at 252, 518 N.E.2d 18. In consideration of the *Barton* holding, the court determined that as a matter of law, plaintiff cannot prevail with its claim of an implied warranty of workmanship and craftsmanship to the extent that plaintiff's claim is construed to be a breach of an implied warranty of fitness for a particular purpose. Similarly, in the case before us, defendants, as a matter of law, cannot prevail on their claim of breach of an implied warranty of fitness for a particular purpose.

**Breach of Express Warranty**

{¶ 71} The evidence is inconclusive as to the duration of the plaintiff's express warranty, except that plaintiff now denies that it would last until defendant Dort sold his house. Teeters conceded that the contract did not contain a written warranty. In his deposition, he testified that plaintiff would stand by the installation always. He then testified that he would stand behind the work for the first year. Riley testified he verbally told defendant that plaintiff would fix improper installation for up to one year and that the one-year period commenced with the signing of the contract. Defendant Dort testified that Riley told him that a warranty would cover materials and labor and would last for as long as defendant Dort owned his home. As noted previously, plaintiff's witnesses' inconsistent testimony regarding the duration of the warranty supports a finding that a totally different version of the duration was presented to defendant Dort. Because the court has found that plaintiff did not install the windows or siding in a workmanlike manner and because plaintiff has not repaired the poor installation, the court finds that plaintiff breached the express warranty. Because the

court has already reached its jurisdictional monetary limit, it will not award additional damages for this breach.

## Analysis and Conclusions of Law Regarding Plaintiff's Complaint

{¶ 72} Plaintiff alleges that defendants breached the contract with plaintiff by failing to pay plaintiff the remaining amount owed on the original contract of $6,348. Plaintiff further alleges that defendants' actions and inactions constitute conversion. Finally plaintiff alleges that defendants were unjustly enriched in the sum of $6,348 for the betterment of the real property located at 2425 Sawbury Blvd. Plaintiff demanded judgment in the amount of $6,348 plus court costs, interest, and any other equitable relief. In closing argument, plaintiff amended its demand to $5,816, plus costs, interest, and other equitable relief.

{¶ 73} "A contract to which the Home Solicitation Sale[s] Act, R.C. 1345.21 et seq., applies cannot be enforced by the seller unless the contract contains written notification of the buyer's right to cancel." *Fain v. Hoptry*, (1986), 34 Ohio App.3d 148, 517 N.E.2d 550, syllabus. "Plaintiff's noncompliance with the [HSSA] * * * invalidates the parties agreement." *Dr. Goldstein's Audiologic Servs. v. Weizman* (July 14, 1999), Cleveland Heights M.C. No. CVF 9801270, 1999 WL 1422603.

{¶ 74} In consideration of this court's finding that the contract between plaintiff and defendants did not contain proper written notification of the defendants' right to cancel as required by the HSSA, the court finds that plaintiff's breach-of-contract claim fails.

{¶ 75} "Unlike R.C. 1345.09, the HSSA does not contain a 'substantial performance' exception. Except as provided in R.C. 1345.27, the act does not require payments returned to the buyer to be offset by the benefit conferred upon the buyer under an unjust enrichment or quantum meruit theory. Thus the [plaintiffs] were not entitled to a setoff for the value of the improvements to the [defendants]." "Home improvement contracts have been classified as 'service' contracts" and therefore plaintiffs bear the risk of starting a project prior to the expiration of a cancellation period. *Kamposek v. Johnson*, 11th Dist. No. 2003–L–124, 2005-Ohio-344, 2005 WL 238152, ¶ 32.

{¶ 76} In consideration of this court's finding that the contract did not contain proper written notification of the defendants' right to cancel as required by the HSSA, the court finds that plaintiff's unjust-enrichment claim fails.

{¶ 77} Although conversion is not necessarily grounded in contract, plaintiff's conversion claim also fails, as he commenced the siding and window work pursuant to an agreement that was subject to but not compliant with the HSSA. Therefore, plaintiff bore the risk of starting prior to expiration of the cancellation period. The court also notes that because it has found that defendants' right to

cancel never expired, plaintiff should not have commenced performance and defendant was never placed under a binding obligation to pay. *Dr. Goldstein's Audiologic Servs.*, supra.

{¶ 78} Therefore, in consideration of this court's finding that the contract did not contain proper written notification of defendants' right to cancel as required by the HSSA, the court finds plaintiff's conversion claim fails.

{¶ 79} Finally, it may seem unfair that the plaintiff cannot recover the $5,816 unpaid on the original contract. However, R.C. 1345.22 specifically requires that "[w]here a home solicitation sale requires a seller to provide services, he shall not commence performance of such services during the time in which the buyer may cancel." While home-improvement contracts are a combination of service and goods, courts have held that they are primarily contracts for services. *Kamposek v. Johnson*, supra; *Clemens v. Duwel* (1995), 100 Ohio App.3d 423, 654 N.E.2d 171, citing *Hines v. Thermal–Gard of Ohio, Inc.* (1988), 46 Ohio Misc.2d 11, 546 N.E.2d 487. This court has found that defendant did not effectively cancel the contract. However, plaintiff has yet to comply with R.C. 1345.23, and therefore the cancellation period has yet to expire. R.C. 1345.22 puts the risk on the home-improvement contractor who begins performance before giving the consumer proper notice of the right to cancel. To interpret the statute otherwise would allow home-improvement contractors to easily circumvent the HSSA merely by beginning and completing performance within the cancellation period. *R. Bauer & Sons Roofing & Siding, Inc. v. Kinderman* (1992), 83 Ohio App.3d 53, 613 N.E.2d 1083. The court in *Hines v. Thermal–Gard* found that "having violated the statutory prohibition of R.C. 1345.22 by commencing performance prior to delivery of a notice of cancellation, Thermal–Gard cannot now be heard to complain of an unjust consequence." 46 Ohio Misc.2d at 14, 546 N.E.2d 487. Similarly, here, plaintiff Teeters Construction cannot now be heard to complain of an unjust consequence.

## CONCLUSION

{¶ 80} The court finds judgment for defendants on their counterclaim in the amount of $15,000 plus interest at the statutory rate from the date of judgment, costs, and reasonable attorney fees. The parties are to appear on January 22, 2007, at 11:00 a.m. for an evidentiary hearing on the proper amount of attorney fees. The court further finds judgment for defendants on plaintiff's complaint. Plaintiff's complaint is dismissed.

{¶ 81} The court hereby directs the municipal court clerk to serve upon all parties notice of this judgment and its date of entry upon the journal.

{¶ 82} Pursuant to R.C. 1345.09 the clerk of court shall mail a copy of this judgment to the attorney general for inclusion in the public file maintained under R.C. 1345.05(A)(3).

So ordered.